IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BOBBY MOORE and HUGH HOLLON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | NO. 3:21-cv-00121 |
| | ) | |
| PEGGY'S AUTO SALES, INC. and | ) | JUDGE CAMPBELL |
| ESTATE OF JERRY LEE POOLE, | ) | MAGISTRATE JUDGE HOLMES |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is a motion for summary judgment filed by Defendants Peggy's Auto Sales, Inc. ("Peggy's") and the Estate of Jerry Lee Poole, deceased ("Poole"). (Doc. No. 33). Plaintiffs Bobby Moore ("Moore") and Hugh Hollon ("Hollon") (collectively "Plaintiffs') file a response in opposition (Doc. No. 37), and Defendants filed a reply (Doc. No. 40). For the reasons discussed below, Defendants' motion will be **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This is a race discrimination, hostile work environment, and retaliation case arising from Plaintiffs' employment with Defendants. Peggy's was a used car dealership in Hendersonville, Tennessee. (Doc. No. 41 ¶ 1). Poole was an "active manager" at Peggy's and in the dealership most of the time. (*Id*. ¶ 2). Hollon, who is African American, was employed by Peggy's as a salesperson from sometime before February 2015 to February 14, 2018. (*Id*. ¶ 3). Moore, who is also African American, was employed as Peggy's Finance Manager from September 2017 to January 8, 2018. (*Id*. ¶ 4). Adam Jordan, who is Caucasian, was Defendants' General Manager and Finance Manager from February 2015 to October 2017 and again from January 2018 to July

2018. (*Id*. ¶ 5). Jordan was a supervisor and the highest-ranking individual at the dealership other than Poole, who was also Caucasian. (*Id*. ¶ 6).

During Plaintiffs' employment with Peggy's, Poole repeatedly referred to Plaintiffs and other African Americans as "n[-word]" in the workplace. (*Id*. ¶ 10). Poole "would say something derogatory—make some reference to a black person in a derogatory way" at least "a couple of times a week." (*Id*. ¶ 11). In or about October or November 2017, Poole told Moore in front of Hollon and others, "We need to just get rid of all these N-words and hire all white people." (*Id*. ¶ 12). Moore opposed Poole's racist statement and told him, "Jerry, you can't be talking like that." (*Id*. ¶ 13). Moore further heard Poole state to others in October or November 2017 that he used to only hire black women "because they needed the money" and "he would make them do favors to get extra money." (*Id*. ¶ 14). Specifically, Poole stated that he "would get them to give [him] a blow job in [his] office." (*Id*. ¶ 14). Right before Christmas 2017, Poole stated to Moore, "Sometimes, I wish I would have never hired your black ass." (*Id*. ¶ 15).

Further, Defendants' Caucasian managers and wholesalers/car buyer contractors, including Jordan, Kurt Gallagher ("Gallagher"), and Wesley Buttrey ("Buttrey"), repeatedly referred to Plaintiffs and other African Americans as "n[-word]" in the workplace. (*Id*. ¶ 16). On several occasions after January 25, 2018, Hollon walked through the area where Defendants' wholesalers and other employees worked and heard some of them, including Poole's longtime friend Buttrey, using "the N-word." (*Id*. ¶ 17). On December 16, 2017, Gallagher went off on Moore and stated, "I'm tired of you-all N-words trying to think you-all can buy a car like you-all run this dealership . . . . I'm the only F-ing one that buys cars for the store." (*Id*. ¶ 19). Hollon observed Gallagher attack Moore and state, "You Ns ain't coming in here and buying cars; I buy the cars for Peggy's Auto Sales." (*Id*. ¶ 20). When Moore complained to Poole on December 18, 2017, about Gallagher

stating to him on December 16, "you all N-words trying to think you-all can buy a car like you-all run this dealership," Poole responded, "You know that n[-word] ain't allowed to buy cars." (*Id*. ¶ 40). After this exchange, Moore decided he was done and figured out his exit plan. (*Id*. ¶ 41).

Defendants asserted in their sworn interrogatory answers that they terminated Moore's employment for alleged misconduct. (*Id*. ¶ 42). Defendants admitted in their deposition, however, that Moore "quit." (*Id*. ¶ 43). Defendants replaced Moore with Jordan. (*Id*. ¶ 45). Defendants then caused criminal charges for theft to be brought against Moore, which were subsequently dismissed. (*Id*. ¶ 46). After he left Peggy's, Moore lost a job opportunity he had applied for because Poole told the manager that Moore stole money from him. (*Id*. ¶ 47).

Gallagher called Hollon "the N-word" on several occasions. (*Id*. ¶ 21). On January 25, 2018, Gallagher told Hollon: "You Ns don't buy cars for this dealership. I do" and "You might not even be working here tomorrow." (*Id*. ¶¶ 22-23). Hollon feared that Gallagher would get Poole to fire him because Gallagher was friends with Poole and bought cars for the dealership. (*Id*. ¶ 24). Several employees witnessed Gallagher's discriminatory conduct and called Poole and told him about it. (*Id*. ¶ 25). The next day, Poole tried to apologize for Gallagher for what he had said to Hollon, but made no assurances that Hollon's job was safe. (*Id*. ¶ 26).

On another occasion, Poole refused to sell a car to Hollon and sold it to a Caucasian coworker instead. (*Id*. ¶ 27). Poole refused to finance Hollon's car deals with customers and redirected them to Caucasian salespeople. (*Id*. ¶ 28). Defendants further cherry-picked the good leads from the internet, phones, and walk-in customers and gave them to Caucasian employees. (*Id*. ¶ 29). Jordan directed car deals away from Hollon and told him on several occasions, approximately 10, 12 times, "I'm going to make sure, N, that you don't get paid on this deal." (*Id*. ¶ 36). Hollon was either not paid or paid less on those deals. (*Id*. ¶ 36).

3

Case 3:21-cv-00121   Document 55   Filed 03/21/23   Page 3 of 9 PageID #: 912

Jordan told Hollon that Defendants paid him more than they paid Moore for the same finance manager job. (*Id.* ¶ 31). Moore heard Sharon Poole, Poole's wife who worked in the dealership, state the same to Poole. (*Id.* ¶ 32). Jordan's pay had gotten substantially lower when he left his employment in October 2017, such that he was making a third of what he made in 2016. (*Id.* ¶ 33). Defendants further provided their Caucasian wholesalers and managers with insurance benefits and PTO, but did not provide Plaintiffs any such benefits. (*Id.* ¶ 34).

Jordan threatened Hollon's job and told him, "I'm going to get your black old ass fired." (*Id.* ¶ 49). Jordan recommended to Poole that Hollon be discharged and told Poole that he would leave his employment if Poole did not fire Hollon. (*Id.* ¶ 50). Defendants terminated Hollon's employment on February 14, 2018. (*Id.* ¶ 51). Hollon understood he was discharged because of his race because he was repeatedly called the N-word on the job. (*Id.* ¶ 53). After they discharged him, Defendants refused to pay Hollon commissions he had earned before they discharged him. (*Id.* ¶ 54).

Plaintiffs filed *pro se* charges of discrimination with the Tennessee Human Rights Commission ("THRC") and the U.S. Equal Opportunity Commission on April 18, 2018. (*Id.* ¶ 56). The THRC issued Notices of Determination on November 15 and 25, 2019. (*Id.* ¶ 61). Plaintiffs retained counsel on or about August 2020 to assist them with the procedures outlined in the Notices of Determination. (*Id.* ¶ 64). Poole died on November 12, 2020. (Doc. No. 38 ¶ 3). In January 2021, Plaintiffs retained their current counsel. (Doc. No. 41 ¶ 66). On February 18, 2021, Plaintiffs filed this action against Defendants under 42 U.S.C. § 1981 ("Section 1981"). (Doc. No. 1).[1] On May 27, 2022, Defendants filed the pending motion for summary judgment. (Doc. No. 33).

---

[1] "[A]s a general rule, a plaintiff's complaint need not expressly plead legal theories; it is sufficient to plead factual allegations that can establish a viable theory." *Boshaw v. Midland Brewing Co.*, 32 F.4th 598, 606–07 (6th Cir. 2022) (citing *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam); *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021)).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

Through the pending motion, both Defendants seek summary judgment on their affirmative defense of laches and on Plaintiffs' discrimination and retaliation claims. Additionally, Poole seeks summary judgment on Hollon's hostile work environment claim against him. (*See* Doc. No. 41 at PageID # 854 ("…Peggy's did not move for summary judgment on the merits of Plaintiffs' hostile work environment claims against it.").

#### A. Laches

Laches is an affirmative defense that may not be invoked to bar legal relief brought within the limitations period set by Congress. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 675-680 (2014). Claims brought under 42 U.S.C. § 1981 are subject to the four-year statute of limitations set forth in 28 U.S.C. § 1658. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004). Plaintiffs filed this action under Section 1981 in February 2021, alleging discriminatory adverse actions in 2017 and 2018. (Doc. No. 1; *see also* Doc. No. 38 ¶¶ 13-14). Because the present suit was brought within the applicable four-year statute of limitations, Defendants "may not shorten the limitations period by asserting a laches defense against [Plaintiffs]." *Operating Engineers Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1054 (6th Cir. 2015) (citing *Petrella*, 572 U.S. at 675-680). Accordingly, Defendants' affirmative defense of laches fails as a matter of law.

#### B. Discrimination claims

Courts review claims of race discrimination brought under Section 1981 under the same standards as claims brought under Title VII. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 302 (6th Cir. 2016). Accordingly, a plaintiff can prove racial discrimination by proffering either direct evidence or circumstantial evidence. *Id*.

1. Disparate Treatment

Here, Plaintiffs have produced evidence of their Caucasian supervisors, including Poole and Jordan, repeatedly using the N-word in reference to Plaintiffs and other African Americans. (Doc. No. 41 ¶¶ 10, 12, 36, 40). This evidence includes Poole's statement to Moore in front of Hollon and others: "We need to just rid of all these N-words and hire all white people." (*Id*. ¶ 12). Additionally, Plaintiffs have produced evidence that Jordan told Hollon: "I'm going get your black old ass fired." (*Id*. ¶ 49). There is also evidence that, prior to Hollon's termination, Jordan recommended to Poole that Hollon be discharged and told Poole that he would leave his employment if Poole did not fire Hollon. (*Id*. ¶ 50). The foregoing is direct evidence of discriminatory intent. *See Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 347 (6th Cir. 2012) (finding "racist comments" constituted direct evidence of discriminatory intent); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) ("decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent."); *see also Kostic v. United Parcel Serv., Inc.*, 532 F. Supp. 3d 513, 527 (M.D. Tenn. 2021) ("Discriminatory remarks by a person who played a meaningful role in the challenged decision, or who had the ability to influence personnel decisions, are relevant direct evidence of discrimination."). Defendants filed a reply but fail to establish the absence of material facts in dispute on Plaintiffs' discrimination claims. (*See* Doc. No. 40). Accordingly, summary judgment is inappropriate, and these claims will proceed to trial.

2. Hostile Work Environment

"'Hostile work environment' is a term of art, which refers to an unlawful employment practice under Title VII that arises because of 'discriminatory intimidation, ridicule, and insult[s]' repeatedly directed at an employee on the basis of a protected characteristic." *Yazdian v. ConMed*

7

Case 3:21-cv-00121    Document 55    Filed 03/21/23    Page 7 of 9 PageID #: 916

*Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–16 (2002)). Through the pending motion, Poole contends summary judgment is appropriate on Hollon's racially hostile work environment claim against him because there is no evidence that his alleged harassing conduct was severe or pervasive. (Doc. No. 34 at 17-18; Doc. No. 40 at 5).[2] The Court disagrees. In the Sixth Circuit, use of the N-word, even taken in isolation, is not a "mere offensive utterance." *See Johnson v. United Parcel Serv., Inc.*, 117 F. App'x 444, 454 (6th Cir. 2004) (noting that use of N-word by supervisor greatly increases the severity of the harassment); *see, e.g.*, *Jordan*, 539 F.Supp.3d at 896 (collecting cases and explaining that the use of the "N-word," even once, was more than a "mere offensive utterance"). Viewing the evidence in the record in the light most favorable to Hollon and drawing all reasonable inferences in his favor, a reasonable jury could find that Poole's racial harassment was severe enough for a reasonable person to find the work environment hostile. (*See* Doc. No. 41 ¶¶ 10, 12). As Poole has failed to demonstrate the absence of a genuine dispute over material facts, Hollon's hostile work environment claim will proceed to trial.

## C. Retaliation claims

Although Defendants move for summary judgment on Plaintiffs' retaliation claims, they fail to meet their initial burden as the moving party of demonstrating the absence of material facts in dispute on these claims. (*See* Doc. No. 34 at 18). Nor have they demonstrated the absence of

---

[2] To establish a prima facie case of a racially hostile work environment with circumstantial evidence, a plaintiff must demonstrate that (1) they belonged to a protected group, (2) they were subject to unwelcome harassment, (3) the harassment was based on race, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act. *See Johnson v. Ford Motor Co.*, 13 F.4th 493, 503 (6th Cir. 2021). Whether conduct is severe or pervasive is "quintessentially a question of fact." *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006). "The fact-intensive nature typically makes the severity and pervasiveness evaluation ... particularly unsuited for summary judgment." *Jordan v. Mathews Nissan, Inc.*, 539 F. Supp. 3d 848, 895 (M.D. Tenn. 2021) (citation and internal quotations omitted).

evidence to support them. (*See id*.). "It is the defendant's burden at the summary judgment stage to make an initial showing that the plaintiff lacks evidence for a claim." *Barrios v. Elmore*, 430 F. Supp. 3d 250, 263 (W.D. Ky. 2020) (citation omitted). "Only when the defendant has made such a [showing] does the burden then shift to the plaintiff." *Id*. Because Defendants' motion for summary judgment is not properly supported as to Plaintiffs' retaliation claims, it will be denied.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE